THOMAS G. LOUDY *vs*. N. P. CLARKE and another.

EDWARD A. LOUDY *vs*. SAME.

March 2, 1891.

**Trial—Ruling Restricting Issues—Failure to Except.**—The court, by its instructions, having informed the jury that only certain specified issues were in controversy, and no exception having been taken or further instruction requested, it cannot be afterwards claimed that there were other issues which ought to have been submitted to the jury.

**Damages for Defects in Goods Manufactured—Pleading—Evidence.** The defendants, as a counterclaim, sought to recover damages for defective workmanship and material used in the manufacture of barrel-heading by the plaintiffs for the defendants. Proof that, by reason of a sale of the defective heading by the defendants, they were afterwards unable to sell other property of that kind, *held* inadmissible, both because not specially pleaded, and because such damages are too remote.

**Same—Loss of Profits.**—Proof of inability to sell "some" of the defective heading, offered for the purpose of showing injury to the business and loss of profits, was properly rejected.

**Rejection of Evidence—Harmless Error.**—The rejection of evidence cannot be deemed to have been prejudicial, the parties having subsequently, in the course of the trial, agreed upon the fact to which such evidence was directed.

**Sealed Verdict—Resubmission.**—A sealed verdict (the jury having separated after agreeing upon and sealing it) may be submitted again to the jury for correction, when they bring it into court and declare that it is not as agreed upon.

Actions brought in the district court for Stearns county, and tried together before *Baxter, J.* The defendants appeal from an order in each case refusing a new trial after verdict for plaintiff of $57.83 in the first case, and $716.87 in the second.

*Reynolds & Stewart*, for appellants.

*D. W. Bruckart*, for respondent in each case.

DICKINSON, J.[1] These two actions were tried together. The four causes of action set up in the complaints originally existed in favor of Thomas G. Loudy. Two of these, being for lumber sold to the defendants, he assigned to Edward A. Loudy. Of the other two, upon which the action of Thomas G. Loudy is based, one was for labor and service done for the defendants. The other, and the only one to which attention will be specially directed, was for the recovery of the price of a large quantity of barrel-heading, which Thomas G. Loudy had manufactured for the defendants out of material belonging to the latter, and which Loudy purchased for them for that purpose. The price to be paid for manufacturing was previously agreed upon, being $2\frac{3}{4}$ cents for each set of heading. The defendants alleged payment, and, further, set up a counterclaim or recoupment, alleging that the material purchased by Loudy was not of the quality required by the terms of the contract, and was unfit for the purpose for which it was purchased; that the heading was poorly manufactured, not as required by the contract, and was unfit for the purposes contemplated by the contract, and unmerchantable. The court instructed the jury, in effect, that the causes of action asserted by the plaintiffs were admitted by the defendants, and that the issues for their consideration were such as arose upon the counterclaim of the defendants. The court also directed the jury as to how the matters of counterclaim were to be applied in reduction of the claims of the plaintiffs. The defendants, having

[1] Vanderburgh, J. by reason of sickness, took no part in this decision.

neither excepted to such instructions of the court, nor, by request for other instructions or otherwise, suggested that such instructions were erroneous, or that the case presented other questions for the consideration of the jury, are to be deemed to have been satisfied with the manner in which the case was presented for the determination of the jury, and are not now at liberty to assign error in these particulars.

Evidence was received on the part of the defendants tending to show that the heading was not of good quality, and how much less it was worth than heading of a good quality would have been. But the defendants offered, further, to prove that after they had sold this product in Minneapolis, and by reason of the fact that it was defective, they were unable to sell other barrel stock. The proof offered was of a fact too remote to constitute a basis for the assessment of damages. It was not the natural or proximate result of the plaintiff's failure to manufacture good heading in accordance with the requirements of the contract. The measure of damages in such cases is well understood, and was presented in this case. It is not apparent how such injurious consequences as are involved in the offer of evidence can have naturally resulted to the defendants, unless, in selling this defective heading, they misrepresented its quality, or sold it for good heading when it was not such. It is to be assumed that they sold it for what it was, and that purchasers had no reason to find fault with the quality of it. But the ruling was right for the further reason that such injurious consequences, not being such as naturally or necessarily resulted from the breach of the contract, and being in the nature of special damages, should not be allowed, if at all, unless specially pleaded. *Ferguson* v. *Hogan,* 25 Minn. 135.

For the same reason last stated, if for no other, the court was right in rejecting the proof offered that the defendants "attempted to sell *some* of this heading in question, and could not sell the same on account of its defectiveness;" this evidence being offered for the purpose of showing injury to the defendants' business and loss of profit. It is admitted that these headings, although defective, were of the value of 1½ cents each. It was not averred that other headings could not be procured for use with the staves in which the defendants were dealing.

The defendants offered to show that, in the course of certain negotiations between the parties, the plaintiff Thomas G. Loudy did not assert any claim of the indebtedness now sought to be recovered, although the circumstances were such that, as is claimed, he would naturally have done so if there had been any such indebtedness. The evidence, if admissible, would only have tended to discredit the plaintiff and the evidence presented in support of his claim; and, though it may have been admissible for that purpose, its rejection cannot now be deemed to have prejudiced the defendants, in view of the fact that when the case came to be submitted to the jury the parties had agreed, as we must suppose, upon the amount of the plaintiff's cause of action; and that was placed before the jury as admitted, without objection or exception.

The jury, having agreed upon verdicts while the court was not open to receive them, placed in writing what were intended to be their verdicts, and, having sealed the same in an envelope, the jury separated. Afterwards, on the same day, the jury presented such sealed verdicts in court. They were opened by the clerk, and read to the jury, without any objection being made to receiving such sealed verdicts. Each member of the jury then declared that these were not their verdicts, but that the word "defendants" (in whose favor the verdicts were, as written) was intended to be "plaintiff." The court then resubmitted these written verdicts to the jury for correction, the defendants objecting. The jury retired, and made the change in the verdicts which they had indicated in open court. No misconduct on the part of the jury is alleged. If the sealing of the verdicts and the separation of the jury afforded any ground for objection, the objection of the defendants came too late. Indeed, they seem to have made no objection upon that ground. A sealed verdict is subject to correction by the jury, before it is recorded, as a verdict rendered orally is; and there was no error in allowing the jury to correct these verdicts, under the circumstances stated. *Nininger* v. *Knox*, 8 Minn. 110, (140.)

The order denying a new trial in both cases is affirmed.